# EXHIBIT A

# TORCH HILL
### INVESTMENT PARTNERS

August 17, 2009

Ms. Susan J. Fox
Chairman of the Board
Fox Systems, Inc.
8263 North Scottsdale Road,
Suite 200
Scottsdale, AZ 85250

Re: Revised Letter of Intent

Dear Susan,

The purpose of this Revised Letter of Intent ("*Revised LOI*") is to amend and replace in its entirety, except as otherwise explicitly set forth herein, the terms of the Letter of Intent, dated March 9, 2009, by and between Fox Systems, Inc. ("Fox"), Cognosante, Inc. ("CSI") and Torch Hill Investment Partners ("Torch Hill") ("*Original LOI*").

Torch Hill is proposing changes to the terms of the Proposed Transaction as outlined below. The reason stems from material changes in Fox's business as uncovered in the due diligence process. Most notable changes are overbilling on the CMS contract during 2008 and non-GAAP revenue recognition treatment of fixed price contracts that resulted in overstated profitability in 2008. These constituted a "material adverse change" per the terms of the Original LOI. Considerable detail documenting these changes has been provided in previous correspondence and working papers.

Torch Hill is prepared to move forward with the Proposed Transaction on the revised terms and structure described below.

Consideration   The consideration to be provided Fox and its shareholders would consist of three major components, "*Cash*", "*Seller Note*" and "*NewCo Stock*";

- <u>Cash</u> totaling approximately $15.9 million consisting of:

    I)   $11.0 million funded by Torch Hill, plus

    II)  $4.0 million funded by mezzanine debt, plus

    III) the CMS NPI settlement for aggregate under-billing covering contract inception to-date, which Fox expects to be approximately $850,000

- <u>Seller Note</u> totaling $4.0 million issued by a newly-formed affiliate of Torch Hill ("NewCo") to Fox shareholders. This Note will be an unsecured obligation of NewCo subordinated to the mezzanine and senior bank facility and senior to all equity. The Note may be redeemed prior to maturity in part or in its entirety at the option of NewCo.

Page 2 of 5

    i)    The Note will bear interest at 6% per annum paid quarterly

    ii)   Principal will be repaid three (3) years from the date of issuance or earlier at the option of NewCo and subject to the rights of other Newco debt holders and in any case subject to NewCo's compliance with debt covenants.

- **Contingent Payment** of $1.0 million. The criteria for award of the contingent payment will be: average revenue for core state MMIS contracts covering procurement, IV&V and MITA work ("Core Contracts") during the first and second 12 month periods post-closing must meet or exceed Core Contracts revenue during CY2008 as represented in documentation provided by Fox (Item 3.10 dated 3/19/09 on the FTP site). However, if Core Contract revenue during the first 12 month period post-closing exceeds Core Contract revenue during CY2008 as represented in documentation provided by Fox (Item 3.10 dated 3/19/09 on the FTP site) by 20% or more the Continent Payment will be awarded on the 12 month anniversary of closing.

- **NewCo Stock** will constitute 10.5% of NewCo common shares outstanding at close.

| | |
|---|---|
| Assumption of Liabilities | NewCo will assume up to $1.0 million in total debt of Fox at closing. Debt is defined as short and long-term bank debt, capital leases and shareholder loans less any excess cash or cash equivalents (excluding the minimum cash balance described below). |
| Working Capital and Closing Cash | Target Working Capital at closing will be equal to twenty-five percent (25%) of trailing twelve month revenue at closing. For example, based on a May 30th closing Target Working Capital would be 25% X $25,944,700 = $6,486,175. Working Capital will be defined as set forth in the draft stock purchase agreement previously provided to Fox by Torch Hill. For purposes of clarity, current assets excludes cash and cash equivalents, etc. and non-interest bearing liabilities excludes short term debt and includes trade payables, accrued payroll/expenses, deferred revenue expenses, etc<br>If at closing there is a working capital deficit, Fox may contribute cash, beyond the $300,000 minimum cash level specified below, to make up the difference or the deficit will be deducted from the Cash consideration. There will be a true up of the actual Working Capital within 90 days of closing. Any remaining deficit will be deducted from the Escrow and if the actual Working Capital exceeds the closing-estimated Working Capital, then NewCo will pay to the Fox shareholders such difference.<br><br>In addition to Target Working Capital, Fox will deliver a minimal level of cash equal to the current bank covenant, $300,000.. Any excess cash prior to closing shall be free to be used as a dividend to Fox shareholders in connection with the closing if the working capital requirement is satisfied. |
| Transaction Structure | NewCo will purchase 100% of the stock of Fox from its parent Affiliated Fox Group, Inc. ("AFGI"). Because Fox is a Q-sub, the acquisition of its stock will be treated as an asset sale for tax purposes. |

Page 3 of 5

| | |
|---|---|
| Confidentiality | Fox shall not make or permit any disclosures to any Person regarding (a) the existence or terms of the Original LOI or this Revised LOI, (b) the existence of discussions or negotiations between Fox and CSI/Torch Hill or (c) the existence or terms of any proposal regarding the Proposed Transaction except as may be needed to provide materials for due diligence. |
| Escrow | $2,000,000 of the cash excluding any under-billing settlement for the CMS NPI contract will be placed in an interest bearing escrow account as indemnity against breaches of seller representations and warranties. |
| | In addition to the representations and warranties in a definitive purchase agreement, any net losses borne by NewCo due to over-billing or exceeding cost ceilings on the CMS NPI contract will be deducted from the Escrow. |
| | Diligence has revealed state tax withholding liability due to the fact that Fox has withheld state taxes in the state of residence only for employees who work out of state regularly. This liability will not be assumed by NewCo. Torch Hill will provide funding for the professional services required to pursue agreements in each state where the company has liability. We expect to negotiate favorable deals in all cases including elimination of interest and penalties due. We will use best efforts to recoup taxes paid to states of residence within the statute of limitations. Any net tax liability (excluding professional service expense incurred) will be deducted from the escrow. |
| | In the event that NewCo suffers any other losses or damages for which indemnification is provided pursuant to the definitive transaction agreements, the amount of such losses shall be deducted from the remaining escrow. Other than for certain customary exclusions, the escrow account shall be the sole remedy for any breaches of representations and warranties contained in the definitive purchase agreement. The escrow account less any deductions described above shall be released to shareholders fifteen (15) months after closing. |
| Governance | The Board of Directors will initially be comprised of five (5) members:<br>• Susan Fox (President)<br>• Michele Kang (Chief Executive Officer)<br>• 3 Torch Hill representatives |
| | Board observers may be incorporated into meetings from time to time as appropriate. |
| | Management Committee will be established to oversee day-to-day operations. Members will include: Mark Shishida representing Fox and other top managers. |
| Minority Protection | Typical drag along/tag along rights, pre-emptive rights, and other protections afforded minority investors. |
| Employment Matters | Contemplates 2-year employment agreements for Mark Shishida, Bill Larkin and Susan Fox. Employees benefits will continue at the same scope and level to ensure the retention of employees including carrying forward of employee accrued vacation. |

Page 4 of 5

| | |
|---|---|
| | Desh Ahuja will remain employed by NewCo for six months post-closing as an executive responsible for merger integration. Mr. Ahuja will report to Susan Fox and Michele Kang and NewCo will pay 50% of his salary. |
| Exclusivity | This Revised LOI extends the period during which Fox and Torch Hill will negotiate on an exclusive basis the acquisition of Fox (the "*Proposed Transaction*") from the date of the Original LOI through September 10, 2009 (the "*Exclusivity Period*"). |
| | During the Exclusivity Period, Fox shall and shall cause its affiliates and its or their respective officers, employees, directors, agents and other representatives (collectively, the "*Representatives*") to, negotiate exclusively and in good faith with Torch Hill towards the Proposed Transaction, and Fox will not, and shall cause the Representatives not to, directly or indirectly, (i) solicit or initiate, or encourage the submission of, any proposal or indication of interest relating to an Alternative Transaction (as defined below), or (ii) participate in any discussion or negotiation regarding or furnish to any Person (as defined below) any information with respect to, or take any other action to facilitate any inquiries or the making of any proposal that constitutes, or may reasonably be expected to lead to, any Alternative Transaction. Fox will immediately notify Torch Hill in writing of any new solicitation of information, proposal, indication of interest or other communication of which it may become aware during the Exclusivity Period relating to a possible Alternative Transaction. For purposes of this Revised LOI "*Alternative Transaction*" means, any transaction other than the Proposed Transaction between Fox and Torch Hill contemplated by this Letter, and "*Person*" means any individual, corporation, partnership, Limited Liability Company or other entity. |
| Expenses | If, after accepting the Revised LOI, Fox, AFGI or AFGI's shareholders choose not consummate the Potential Transaction for any reason other than a material change by Torch Hill in the terms outlined in this Revised LOI that is not based on any change or effect that is or could reasonably be expected to be materially adverse to the business, financial condition, results of operations or prospects of Fox (an "*Adverse Fox Change*") as determined by Torch Hill in its discretion, Fox will reimburse Torch Hill for up to $200,000 in Transaction Expenses incurred by Torch Hill after March 20, 2009. If there is an Adverse Fox Change, Torch Hill may propose material changes to the terms outlined in this Revised LOI and continue to negotiate in good faith towards consummation of a Proposed Transaction without Torch Hill losing its right to reimbursement for Transaction Expenses as set forth in the previous sentence. |
| | If Torch Hill chooses not consummate the Potential Transaction for any reason other than an Adverse Fox Change as determined by Torch Hill in its discretion, Torch Hill will reimburse Fox for up to $100,000 in Transaction Expenses incurred by Fox after March 20, 2009. |
| | For purpose of this "Expenses" provision, "*Transaction Expenses*" includes outside legal, accounting and technology diligence fees and associated out of pocket expenses, reasonable travel expenses, as well as any pre-closing financing fees incurred by a party in connection with the Proposed Transaction. |
2000 Pennsylvania Avenue, Suite 3100, Washington, DC 20006
PHONE (202) 536-1200 FAX (202) 536-1201

Page 5 of 5

If the Potential Transaction is consummated, Torch Hill will be entitled to reimbursement for all (100%) of their documented reasonable transaction expenses from NewCo, subject to certain agreed upon caps in the definitive transaction agreements.

Nothing in this Revised LOI may be construed as a waiver of Torch Hill's right to receive payment for, or of Fox's obligation to pay, Transaction Expenses as defined in the Original LOI. Unless the Proposed Transaction is consummated, Fox will be liable for all Transaction Expenses up to $200,000 since March 20, 2009 as there has been a "material adverse change" pursuant to the terms of the Original LOI.

**Miscellaneous**  Notwithstanding anything in this Revised LOI to the contrary, nothing in this letter shall bind Fox or Torch Hill to consummate the Proposed Transaction. The respective rights and obligations of Torch Hill and Fox pertaining to the Proposed Transaction remain to be defined in a purchase agreement and related documents (the terms and provisions of which will be subject to approval by Fox and Torch Hill), and the Parties do not intend to be legally bound or otherwise to incur any obligations with respect to the Proposed Transaction until such time as a purchase agreement and related documents have been duly executed and delivered. Notwithstanding the foregoing, the provisions of paragraphs labeled "Confidentiality," "Exclusivity" and "Expenses" will be fully binding upon the execution hereof.

Susan, it is our intention to finalize and execute definitive transaction agreements during this Exclusivity Period covering all major aspects of the Proposed Transaction including final consideration, transaction structure and employment agreements for key employees. If you are in agreement, please sign this Revised LOI and return to us a hard and soft copy.

Sincerely,

Torch Hill Investment Partners, LLC

By: _____
William R. Sullivan
Managing Member

Agreed and accepted as of August 17, 2009

Fox Systems, Inc.

By: _____ (MKS)
Susan J. Fox
Chairman of the Board